UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| Citizens Insurance Company of America<br>And<br>Hanover Insurance Company<br>   Petitioners<br><br>v.<br><br><br>Lee Residential Care, LLC,<br>Jeanette Larkin and Jonathan Larkin<br>Individually and as Guardians and<br>Parents of J.L.,<br>And<br>Eric G. McCue as Personal<br>Representative of the Estate of Shawn M. McCue<br>   Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:<br><br>Petition for Declaratory Judgment |

## PETITION FOR DECLARATORY JUDGMENT

NOW COME Citizens Insurance Company of America ("Citizens") and Hanover Insurance Company ("Hanover") by their attorneys Primmer Piper Eggleston & Cramer PC, and respectfully files the following Petition for Declaratory Judgment against Lee Residential Care, LLC, Jeanette Larkin and Jonathan Larkin, individually and as Guardians and Parents of J.L. and Eric G. McCue as Personal Representative of the Estate of Shawn M. McCue. In support thereof, the Petitioner states as follows:

### PARTIES

1. Citizens is a foreign insurance company authorized to do business in the State of Maine, domiciled in the State of Michigan, with a principle legal address of 808 North Highlander Way Howell, Michigan 48843.

2. Hanover is an insurance company authorized to do business in the State of Maine, domiciled in the state of New Hampshire with a legal address of 4 Bedford Farms Drive, Suite 107, Bedford, NH 03110.

3. Lee Residential Care, LLC ("Lee Residential") is a registered Maine corporation that operates residential group homes for adults with disabilities in Hampden, Penobscot County, State of Maine.

4. Jeanette Larkin and Jonathan Larkin are residents of Penobscot County, State of Maine. Jeanette Larkin and Jonathan Larkin are the parents and guardians of J.L.

5. Eric G. McCue is a resident of Brewer, Penobscot County, State of Maine. Eric McCue was the father, legal guardian and personal representative of Shawn M. McCue.

## JURISDICTION AND VENUE

6. This is an action for declaratory relief brought pursuant to 28 U.S.C. § 2201, et seq.

7. The District Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a) because there is complete diversity of citizenship amongst the parties, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

8. Venue is proper in this judicial district because the insurance policy at issue was issued in the State of Maine.

9. This Court has jurisdiction over this matter as the involved insurance policy was issued in the State of Maine, to a Maine insured, Lee Residential Care, LLC.

10. This Court maintains jurisdiction pursuant to 28 U.S.C. § 2201which provides this Court with the power to declare rights and other legal relations of any interested party seeking declaration, whether or not further relief is or could be sought.

11. Since the insurance policy was issued in Maine, and since Citizens and Hanover are requesting that this Court issue a Declaratory Order regarding Lee's entitlement to indemnity coverage under two Maine insurance policies, this Court possesses jurisdiction pursuant to 28 U.S.C. § 2201.

## BACKGROUND

12. This Complaint for Declaratory Judgment arises out of two separate lawsuits, the first entitled ***Jeanette Larkin and Jonathan Larkin, individually and as Guardians and Parents of J.L. v Lee Residential Care LLC***, Docket Number PENSC-CIV-2025-00051, and the second entitled ***Eric G. McCue as Personal Representative of the Estate of Shawn M. McCue v. Lee Residential Care***, Docket Number PENSC-CIV-2025-00019.  Both lawsuits involve substantially the same or similar set of facts and involve the same individuals previously employed by Lee Residential.

2

    a. *<u>Jeanette Larkin and Jonathan Larkin, individually and as Guardians and Parents of J.L. v Lee Residential Care LLC.</u>*

13. Plaintiffs, Jeanette and Jonathan Larkin, for themselves and as parents and guardians for their intellectually disabled son, J.L., allege that J.L. has severe intellectual disabilities including autism and schizophrenia and that he is mostly non-verbal, requiring constant supervision from others to complete his activities of daily living. J.L. was admitted to a Lee Residential group home called Westbrook Terrace in or around August 10, 2015, and that he lived there until December of 2024. Ex. A, ¶ 15.

14. Plaintiffs allege that from 2015 to January 2022, Lee Residential employees subjected J.L. to many incidents of physical, sexual and mental abuse. Ex. A, ¶¶ 24-37.

15. Plaintiffs also allege that Lee Residential employees strangled J.L. during physical restraints with their hands and arms until he passed out. Ex. A, ¶¶ 29-30.

16. Plaintiffs allege that Lee Residential employees would regularly demean J.L. by calling him names to get him to react so that they could then put him in physical restraints. Ex. A, ¶¶ 32-33.

17. Finally, the plaintiffs have alleged that Lee Residential employees compelled J.L. to engage in self sodomy by using household objects such as a spray can and a TV remote and that in or around 2018, Lee Residential employees also persuaded J.L's intellectually disabled roommate to commit a sexual assault on J.L. in exchange for a pizza resulting in being sexually assaulted. Ex. A, ¶¶ 34-37.

18. Plaintiffs also allege that in December of 2021, Lee Residential employees again persuaded another resident to sexually assault J.L. in exchange for a pizza resulting again in J.L. being sexually assaulted by another roommate. Ex. A, ¶¶ 37.

19. Plaintiffs allege that Lee Residential's management team was aware or should have been aware of what was going on, but they failed to take any measures to protect him from their employees' harmful conduct. Ex. A, ¶¶ 38-48.

20. It is alleged that Lee Residential's management team was specifically aware of the 2018 sexual assault by J.L.'s roommate and that they did not report same to Adult Protective Services as required and they did not fire the staff involved either. Ex. A, ¶¶ 39-40.

21. Plaintiffs contend further that sometime between January of 2021 and May of 2021, staff members in J.L.'s home accused each other of physically abusing J.L. during a restraint and Lee Residential's CEO then held a private staff meeting for those staff members that were involved but did not fire any of them and did not report the abuse to Adult Protective Services either. Ex. A, ¶¶ 41-48.

22. It is alleged further that J.L.'s parents only learned about the extent of the abuse that their son had suffered when the police investigated the facility and revealed some of their findings from their investigation. The Larkins assert counts of (1) Negligence, (2) Negligent Supervision, Training and Retention, (3) Fraudulent Concealment, (4) Negligent Infliction of Emotional Distress, (5) Intentional Infliction of Emotional Distress, (6) Vicarious Liability, (7) Breach of Contract and (8) Punitive Damages. Ex. A, *generally*.

   b. *Eric G. McCue as Personal Representative of the Estate of Shawn M. McCue v. Lee Residential Care LLC*.

23. The *McCue* lawsuit involves the care of Shawn McCue, who eventually passed away from a seizure on January 31, 2024. Ex. B.

24. Shawn McCue had physical and intellectual disabilities throughout his lifetime, including cerebral palsy, mild mental retardation, obsessive compulsive disorder, receptive expressive language disorder, and a seizure disorder and was unable to live independently due to his disabilities. Ex. B, ¶ 4.

25. Plaintiff alleges that Eric McCue became Shawn's legal guardian when Shawn turned 18. Ex. B, ¶ 4.

26. Zachary Conners (also spelled Connors in some documents) was a direct support professional employed by Lee Residential. Ex. B, ¶ 6.

27. It is alleged that at all times relevant to this Complaint, Zachary Conners was an agent and/or employee of Lee Residential. Ex. B, ¶ 6.

28. It is alleged that on August 10, 2015, Shawn McCue became a resident at the Westbrook Terrace location of Lee Residential, located at 18 Westbrook Terrace in Hampden, Maine. Ex. B, ¶ 8.

29. The *McCue* lawsuit alleges that in approximately 2017, Lee Residential hired Zachary Conners to work at the residential placement where Shawn McCue resided. Ex. B, ¶ 9.

30. The lawsuit alleges that in 2018, staff members at Lee Residential started to document more aggressive behavior from Shawn towards staff. Ex. B, ¶ 10.

31. The lawsuit alleges that in November of 2018, Eric McCue was told that Lee Residential could no longer care for Shawn McCue because he was having angry outbursts directed at staff. Ex. B, ¶ 11.

32. The lawsuit alleges that in July of 2019, Shawn McCue left Lee Residential and moved to a different group home. Ex. B, ¶ 12.

33. Eric McCue alleges that in January of 2022, the Maine State Adult Protective Services received a report of a staff member at Lee Residential bringing a weapon to work. Ex. B, ¶ 13.

34. The lawsuit alleges that on March 3, 2022, an employee of Lee Residential reported abuse by Zachary Conners and other Lee Residential agents and employees towards residents. Ex. B, ¶ 14.

35. The lawsuit alleges that in approximately March of 2022, law enforcement started investigating claims related to abuse of residents at the hands of staff members of Lee Residential. Ex. B, ¶ 15.

36. Shawn McCue passed away on January 31, 2024, from a seizure. Ex. B, ¶ 17.

37. Zachary Conners is alleged to be the "ringleader in the violent culture" at Lee Residential and that his actions included allegations of waterboarding residents, constantly punching victims in the testicles, and sodomy. Ex. B, ¶ 19.

38. The State of Maine filed a criminal complaint against Zachary Conners. Ex. B, ¶¶ 18-19.

39. The criminal complaint also included allegations that Lee Residential staff bribed and manipulated residents into engaging in sexual acts with one another as a form of entertainment. Ex. B, ¶¶ 18-19.

40. A former employee of Lee Residential stated he or she witnessed a staff member at Lee Residential manipulate Shawn McCue into performing oral sex on another resident in exchange for pizza. That specific incident of sexual abuse allegedly occurred sometime between January 1, 2018, and July 31, 2019. Ex. B, ¶¶ 21-24.

41. In January 2025, Eric McCue was contacted by a law enforcement agent who informed him that he was reopening an investigation involving abuse of residents at Lee Residential and that the law enforcement agent had reason to believe that Shawn McCue had been a victim of crimes while he had been living at Lee Residential. Ex. B, ¶ 25.

42. As a result of the abuse, Shawn McCue allegedly suffered severe and debilitating emotional injuries, pain and suffering, physical and emotional trauma, and permanent psychological damage. The Plaintiff in the *McCue* matter alleges counts of (1) Negligent Supervision, (2) Breach of Fiduciary Duty, (3) Assault, (4) Intentional Infliction of Emotional Distress, (5) Vicarious Liability, (6) Fraudulent Concealment, and (7) Punitive Damages. Ex. B, ¶ 27, and *generally*.

   c. **Other Claims and Criminal Charges**

43. On May 24, 2023, Zachary Conners was indicted on 4 counts of Endangering Welfare of Dependent Person. Ex. C.

44. On May 24, 2023, Rene J. Dubois, III, was indicted on 4 counts of Endangering Welfare of Dependent Person. Ex. D.

45. On August 30, 2024, Zachery Conners pled guilty to one charge of Intentionally Endanger Welfare of Dependent Person. Ex. E.

46. Zachery Conners was sentenced to the Department of Corrections for a term of 5 years, with all but 30 months of the sentence as it relates to confinement were suspended and he was sentenced to a period of probation for a term of 2 years. Ex. E.

47. On October 10, 2024, Rene J. Dubois, III, pled to guilty one charge of Intentionally Endanger Welfare of Dependent Person. Ex. F.

48. Rene J. Dubois, III, was sentenced to the Department of Corrections for a term of 5 years, and he was sentenced to a period of probation for a term of 2 years. Ex. F.

49. Prior to the entry of the two guilty pleas, the State of Maine filed Sentencing Memoranda which detailed the specific allegations against both Rene J. Dubois, III and Zachary Conners. Ex. G.

50. The Conners sentencing memorandum describes in detail many of the allegations contained within the *Larkin* and *McCue* lawsuits. Ex.'s A, B and G.

51. The Conners sentencing memorandum describes in detail the events and nature of the abuse, and also identified Rene J. Dubois, III, and Zachary Conners as the ringleaders of the series of acts. Ex. G, Pg. 4.

52. The Conners sentencing memorandum states that Zachary E. Conners reported to authorities that he learned to be abusive by Rene J. Dubois, III and another Lee Residential employee, identified as Mike Slater. Ex. G.

53. The Conners sentencing memorandum also specifically names another potential victim, identified as Kyle Roderick. Ex. G.

54. It may reasonably be anticipated that a claim or lawsuit may eventually be filed on Kyle Roderick's behalf.

## THE POLICIES

### I.   The Commercial Package Policy, Policy Number ZBP A091502 02.

55. Citizens Insurance Company of America issued a commercial general liability policy to Lee Residential with policy effective dates of August 15, 2015 to August 15, 2016.

56. The policy carries liability limits of $1,000,000 each occurrence and $3,000,000 general aggregate.

57. The policy was subsequently renewed on a yearly basis through at least August 15, 2020, policy number ZBP A091502 06.

58. The policy includes the **Commercial General Liability Form**, Form Number **CG 00 01 04 13**, stating in relevant part:

    SECTION I – COVERAGES
    COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
    1. Insuring Agreement
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
    …
        b. This insurance applies to "bodily injury" and "property damage" only if:
            **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place   in the "coverage territory";
            **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
            **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
    …
        2. Exclusions
        This insurance does not apply to:
        a. Expected Or Intended Injury
        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
    …

59. The Policy also includes the endorsement, **Physical Abuse, Sexual Misconduct or Sexual Molestation Liability Coverage Endorsement (Occurrence-Separate Aggregate)** endorsement, **Form Number 421-0552 07 16**, which modifies the insurance provided under the Commercial General Liability Coverage Part, and carries limits of $1,000,000 each "Physical Abuse, Sexual Misconduct or Sexual Molestation" incident  and $3,000,000 each "Physical

Abuse, Sexual Misconduct or Sexual Molestation" aggregate limit, and which states in pertinent part:

Except for the insurance provided by this endorsement, the Coverage Part to which this endorsement is attached does not apply to any claim or "suit" seeking damages arising out of any actual or alleged "physical abuse, sexual misconduct or sexual molestation incident".

**A.** For the purpose of coverage provided by this endorsement, the following is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**PHYSICAL ABUSE, SEXUAL MISCONDUCT AND SEXUAL MOLESTATION**

**a.** We will pay those sums the insured becomes legally obligated to pay as damages because of "injury" arising out of a "physical abuse, sexual misconduct or sexual molestation incident" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "physical abuse, sexual misconduct or sexual molestation incident" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE** as modified below; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless
Expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**.

**b.** This insurance applies to "injury" only if:

(1) The "injury" arises out of a "physical abuse, sexual misconduct or sexual molestation incident" that takes place in the "coverage territory";

(2) The first act of a "physical abuse, sexual misconduct or sexual molestation incident" occurs during the policy period; and

(3) Prior to the policy period no insured listed under **SECTION II – WHO IS AN INSURED,** Paragraph **1.** and no "employee" authorized by you to give or receive notice of a "physical abuse, sexual misconduct or sexual molestation incident" or claim knew that the "physical abuse, sexual misconduct or sexual molestation incident" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "physical abuse, sexual misconduct or sexual molestation incident" occurred, then any multiple, continuous, related or repeated acts of such "physical abuse, sexual misconduct or sexual molestation incident" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** A "physical abuse, sexual misconduct or sexual molestation incident" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under **SECTION II – WHO IS AN INSURED,** Paragraph **1.** or any "employee" authorized by you to give or receive

notice of a "physical abuse, sexual misconduct or sexual molestation incident" or claim, includes any multiple, continuous, related or repeated acts of that "physical abuse, sexual misconduct or sexual molestation incident" after the end of the policy period.

**d.** A "physical abuse, sexual misconduct or sexual molestation incident" will be deemed to have been known to have occurred at the earliest time when any insured listed under **SECTION II – WHO IS AN INSURED,** Paragraph **1.** or any "employee" authorized by you to give or receive notice of a "physical abuse, sexual misconduct or sexual molestation incident" or claim:

(1) Reports all or any part of the "physical abuse, sexual misconduct or sexual molestation incident" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "physical abuse, sexual misconduct or sexual molestation incident"; or

(3) Becomes aware by any other means that the "physical abuse, sexual misconduct or sexual molestation incident" has occurred or has begun to occur.

**B.** For the purpose of coverage provided by this endorsement, **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is replaced by the following:

**2. Exclusions**

The insurance provided under this endorsement does not apply to:

**a. Participating In or Knowingly Allowing "Physical Abuse, Sexual Misconduct or Sexual Molestation"**

Any person who participated in, knowingly allowed or directed any "physical abuse, sexual misconduct or sexual molestation incident".

**b. Dishonest, Fraudulent, Criminal, Wrongful or Malicious Act**

"Injury" arising out of any intentional, dishonest, fraudulent, criminal, wrongful or malicious act committed by, knowingly allowed, or directed by the insured, including the willful or reckless violation of any statute or law.

This exclusion applies even if:

(1) The insured or the person causing the "injury" lacks the mental capacity to control or govern his or her own conduct; or

(2) The insured or the person causing the "injury" temporarily lacks the capacity to control or govern his or her own conduct or is temporarily unable to form any intent to cause harm.

This exclusion applies regardless whether the insured or the person causing the "injury" is actually charged with or convicted of a crime.

…

**h. Punitive or Exemplary Damages**

Any sum awarded for punitive, exemplary, or multiplied damages, taxes, fines, or penalties arising out of any "physical abuse, sexual misconduct or sexual molestation incident".

…

**D.** For the purpose of coverage provided by this endorsement, **SECTION III – LIMITS OF INSURANCE** is replaced by the following**:**

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Schedule above and the rules below fix the most we will pay regardless of the number of:

  a. Insureds;

  b. Claims made or "suits" brought; or

  c. Persons or organizations making claims or bringing "suits".

**2.** The "Physical Abuse, Sexual Misconduct or Sexual Molestation" Aggregate Limit is the most we will pay for all damages because or arising in any way out of "physical abuse, sexual misconduct or sexual molestation" to which this insurance applies.

**3.** Subject to the "Physical Abuse, Sexual Misconduct or Sexual Molestation" Aggregate Limit, the "Physical Abuse, Sexual Misconduct or Sexual Molestation" Each Incident Limit is the most we will pay for all damages sustained in any one "physical abuse, sexual misconduct or sexual molestation incident".

**4.** The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

…

**F.** For the purpose of coverage provided by this endorsement, the following are added to **SECTION V – DEFINITIONS:**

**1.** "Injury" means

  a. "Bodily injury";

  b. Mental anguish or emotional distress;

  c. Oral, written or electronic publication of material that slanders or libels a person or organization;

  d. Oral, written or electronic publication of material that violates a person's right of privacy; or

  e. Wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  caused by a "physical abuse, sexual misconduct or sexual molestation incident".

**2.** "Physical abuse, sexual misconduct or sexual molestation" means actual or alleged physical abuse, sexual misconduct or sexual molestation arising out of a single, continuous or repeated exposure of one or more persons to acts of a physical abuse or sexual nature committed by:

  **a.** One person; or
  **b.** Two or more persons acting together or in related acts or series of acts.

However, "physical abuse, sexual misconduct or sexual molestation" does not include employment-related sexual harassment.

10

    3. "Physical abuse, sexual misconduct or sexual molestation incident" means an act or multiple, continuous, related or repeated acts of "physical abuse, sexual misconduct or sexual molestation" by one person or two or more persons acting together. All acts of "physical abuse, sexual misconduct or sexual molestation" by any one person, or two or more persons acting together will be deemed as one incident. The "physical abuse, sexual misconduct or sexual molestation incident" will be deemed to occur when the first "physical abuse, sexual misconduct or sexual molestation incident" takes place regardless of:

      a. The number of persons injured;

      b. The time period over which the "injury" took place;

      c. The number of such acts; or

      d. Whether each such person participated in each act.

    All "physical abuse, sexual misconduct or sexual molestation incidents" by one person, or two or more persons acting together will be considered one "physical abuse, sexual misconduct or sexual molestation incident".

…

## II. Commercial Umbrella Policy, Policy Number UHP A091732 02.

60. Hanover Insurance Company issued the Commercial Follow Form Excess and Umbrella Policy No. UHP A091732 02 to Lee Residential Care LLC with policy effective dates of August 15, 2015 to August 15, 2016.

61. The policy carries liability limits of $1,000,000 each occurrence or each claim, and $1,000,000 general aggregate.

62. The policy was subsequently renewed on a yearly basis through at least August 15, 2020, policy number UHP A091732 06.

63. The Policy includes the **Commercial Follow Form Excess and Umbrella Policy**, Form Number **475-0001 12 14**, which states in pertinent part:

    **I. INSURING AGREEMENTS**

      **1. Coverage A – Follow Form Excess Liability Insuring Agreement**

        a. We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:

          (1) Such damages are covered by "underlying insurance";

          (2) The event which triggers coverage on the "underlying insurance" takes place during the policy period of this insurance, and

          (3) The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.

      **b.** We will not pay damages that the "underlying insurance" does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.

      **c.** The terms and conditions of the "underlying insurance" in effect at the inception of this policy apply unless they are inconsistent with the terms and conditions of this policy.

…

  **2. Coverage B – Umbrella Liability Insuring Agreement**

      **a.** We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, provided:

      **(1)** The:

        (a) "Bodily injury" or "property damage" is caused by an "occurrence"; or

        (b) "Personal injury" and "advertising injury" is caused by an offense arising out of your business;

      Which took place within the coverage territory as described in section **IV. COVERAGE TERRITORY**;

      **(2)** The "bodily injury" or "property damage" occurs during the policy period, and the offense causing "personal injury" or "advertising injury" is first committed during our policy period; and

      **(3)** Prior to the policy period, no insured and no "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, knew that the "bodily injury", "property damage", "personal injury" or "advertising injury" had occurred, in whole or in part. If such an insured or authorized "employee" knew, prior to the policy period, that the "bodily injury", "property damage", "personal injury" or "advertising injury" occurred, then any continuation, change or resumption of such "bodily injury", "property damage, "personal injury" or "advertising injury" during or after the policy period will be deemed to have been known prior to the policy period.

    **c. Coverage B – Umbrella Liability Insuring Agreement** does not apply to:

    (1) Any claim or "suit" which is covered by "underlying insurance" regardless of whether or not the "underlying insurance" is available or the limits have been exhausted;

    (2) Any claim or "suit" covered by **Coverage A – Follow Form Excess Liability Insurance** of this policy; or

    (3) Any costs or expenses related to loss as described by **c.(1)** or **c.(2)** above.

…

### VI. LIMITS OF INSURANCE

Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability**

1. The limits of insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
    a. Insureds;
    b. Claims made or "suits" brought;
    c. Persons or organizations making claims or bringing "suits"; or
    d. Coverages provided by this policy.

3. Subject to the Each Occurrence Limit, the General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages, except:
    a. Damages Included in the "products - completed operations hazard"; or
    b. Otherwise covered by "underlying insurance", but to which no aggregate limit in such "underlying insurance" applies.

4. The Each Occurrence Limit shown in the Declarations is the most we will pay for damages arising out of any one "occurrence" or offense under **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability** combined, even if such loss is or otherwise would be covered in whole or part under more than one "underlying insurance".

5. Any amount paid for loss will reduce the amount of the applicable aggregate limit available for any other payments.

6. If the applicable aggregate limit has been reduced to any amount that is less that the Each Occurrence Limit, the remaining amount of such applicable aggregate is the most that will be available for any other payments.

7. If the Limits of Insurance of any "underlying insurance" are reduced by defense expenses under the terms of that policy, then any defense expense payments we make to defend any insured will reduce our applicable Limits of Insurance in the same manner.

8. The Aggregate Limits of this policy apply separately to each consecutive annual period. If our policy period is extended to a period greater than twelve (12) months, the extended period will be considered part of the original policy period for determining the Limits of Insurance.

…

### VII. EXCLUSIONS

**1.** Applicable to both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability**

…

**2.** Applicable to **Coverage A – Follow Form Excess Liability** only:

This insurance does not apply to:

…

**3.** Applicable to **Coverage B – Umbrella Liability** only:

This insurance does not apply to:

**f. Expected or Intended Injury**

"Bodily injury", "property damage", "personal injury" or "advertising injury" expected or intended from the standpoint of the insured.
This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   **i. "Personal Injury" and "Advertising Injury"**
   Any liability or expense for "personal injury" and "advertising injury":
   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights or another and would inflict "personal injury" or "advertising injury";
   (4) Arising out of a criminal act committed by or at the direction of the insured;

**k. Professional Liability**
Any liability or expense arising out of the rendering of or failure to render any professional service, advice or instruction by you or on your behalf, or from whom any of you assumed liability by reason of a contract or agreement, regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

**l. Punitive Damages**
Any sum awarded for punitive damages, exemplary damages, multiplied damages, taxes, fines, or penalties.

…

**IX. DEFINITIONS**

Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella:**

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
14. **"Personal Injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or Oral or written publication, in any manner, of material that violates a person's right of privacy;

…

64. The Policy includes the **Exclusion-Abuse and Molestation (Coverage B)** endorsement, Form Number 475-0238 12 14, which states:

    The following is added to section **VII. EXCLUSIONS**, paragraph **3.** Applicable to **Coverage B – Umbrella Liability** only:

    This insurance does not apply to:

    **Abuse and Molestation**

    Any liability or expense arising out of:
    - **(1)** The actual or threatened abuse or molestation by anyone of any person regardless whether the abuse or molestation was specifically intended or resulted from negligent conduct and regardless whether any insured subjectively intended the injury or damage for which a claim is made, or
    - **(2)** The negligent:
        a. Employment;
        b. Investigation;
        c. Supervision;
        d. Reporting to the proper authorities, or failure to so report; or
        e. Retention;
        of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **(1)** above.

    …

65. The Policy includes the **Exclusion-Innocent Party Defense (Coverage A and B)** endorsement, **Form Number 475-0298 12 14**, which states:

    A. The following is added to section **I. INSURING AGREEMENTS,** paragraph **1. Coverage A – Follow Form Excess Liability Insuring Agreement** and paragraph **2. Coverage B – Umbrella Liability Insuring Agreement**:

    We have no duty to defend any insured against any "suit" seeking damages for participating in, knowingly allowing or directing any "sexual misconduct or sexual molestation incident" or any "physical abuse, sexual misconduct or sexual molestation incident".

    The following is added to section **VII. EXCLUSIONS,** paragraph **1.** Applicable to Both **Coverage A – Follow Form Excess Liability** and **Coverage B – Umbrella Liability**:

    This insurance does not apply to:

    **Innocent Party Defense**

    Any liability or expense relating to the defense of any insured against any "suit" seeking damages for participating in, knowingly allowing or directing any sexual misconduct or sexual molestation incident or any physical abuse, sexual misconduct or sexual molestation incident.

    …

**PRAYER FOR DECLARTORY RELIEF**

66. It is the position of Citizens and Hanover that a single occurrence limit applies to the claim described herein such that there is $1,000,000 in general liability coverage and $1,000,00 in follow-form excess coverage available for all claims relating to all acts perpetrated by Zachary E. Conners and/or Rene J. Dubois, III.

67. 28 U.S.C. § 2201 proscribes when such a filing may be necessary:

    **(a)** In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930, as determined by the administering authority, **any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. (emphasis added).**

28 U.S.C. § 2201

68. The Citizens Policy excludes any claim or "suit" for damages arising out of an actual or alleged "physical abuse, sexual misconduct or sexual molestation incident" unless covered by the **Physical Abuse, Sexual Misconduct or Sexual Molestation Liability Coverage Endorsement (Occurrence-Separate Aggregate)** endorsement.

69. The endorsement includes limits of $1,000,000 each "Physical Abuse, Sexual Misconduct or Sexual Molestation" incident and a $3,000,000 "Physical Abuse, Sexual Misconduct or Sexual Molestation" aggregate limit.

70. The endorsement specifically excludes coverage for such damages under the general liability coverage part unless covered under the endorsement.

71. The endorsement affords coverage for sums the insured becomes legally obligated to pay as damages because of "injury" arising out of a "physical abuse, sexual misconduct or sexual molestation incident". While the endorsement carries a $3,000,000 aggregate limit, that limit is only triggered if there is more than one "physical abuse, sexual misconduct or sexual molestation incident".

72. The endorsement defines "physical abuse, sexual misconduct or sexual molestation incident" as:

    "**an act or multiple, continuous, related or repeated acts of "physical abuse, sexual misconduct or sexual molestation" by one person or two or more persons acting together**. <u>**All acts of "physical abuse, sexual misconduct or sexual molestation" by any one person, or two or more persons acting**</u>

> **together will be deemed as one incident. The "physical abuse, sexual misconduct or sexual molestation incident" will be deemed to occur when the first "physical abuse, sexual misconduct or sexual molestation incident" takes place regardless of:**
> a. **The number of persons injured**;
> b. **The time period over which the "injury" took place;**
> c. **The number of such acts; or**
> d. **Whether each such person participated in each act.**
>
> **All "physical abuse, sexual misconduct or sexual molestation incidents" by one person, or two or more persons acting together will be considered one "physical abuse, sexual misconduct or sexual molestation incident"."**

(emphasis added).

…

73. The determination of whether there existed a single "physical abuse, sexual misconduct or sexual molestation incident" or whether more than one incident occurred will be based upon the facts alleged, available criminal judgments and those established through discovery or trial.

74. The *Larkin* Complaint alleges that from 2015 to January 2022, Lee Residential employees subjected J.L. to many incidents of physical, sexual and mental abuse. The Complaint alleges "many incidents of physical, sexual and mental abuse" occurring between 2015 and January of 2022.  Ex. A ¶¶ 23-24.

75. The *Larkin* suit alleged several "employees" of Lee Residential were regularly subjecting J.L. to various instances of abuse. Ex. A ¶¶ 25-47.

76. The "employees" referred to in the *Larkin* Complaint are identified in the criminal proceedings as Zachary Conners and/or Rene J. Dubois, III.

77. The *McCue* Complaint focuses on the actions of Zachary Conners and those that participated in the abuse with him.  The suit alleges that Shawn McCue lived at the Lee Residential Group Home beginning on August 10, 2015.  The allegations of sexual assault began after Zachary Conners was hired in approximately 2017.  Ex. B ¶9.

78. The Complaint specifically refers to the criminal charges which identified acts of abuse between January 2019 and January 2022 at the hands of Conners, also identifying him as a "ringleader in the violent culture" existing at Lee Residential. Ex. B ¶¶ 18-19.

79. The *McCue* complaint specifically identifies Zachary Conners as the primary perpetrator.   Notably, the Complaint asserts that McCue was a victim of abuse by employees of Lee Residential between 2017 and 2019. Ex. B.  ¶¶69-70.

80. The criminal indictments, plea agreements and sentencing memoranda focus on the acts of Conners and Dubois. Ex.'s C, D, E and F.

81. Both indictments describe that Dubois and Conners were the primary perpetrators, and that Conners served as a ringleader in the "violent culture that was prevalent at Westbrook house and which spilled over into the Ruth house while Larkin and Roderick were together". Ex.'s C, D, E and F.

82. The indictments allege acts occurring after Conners was hired in 2017. Specific acts were alleged between 2019 and 2022. Ex.'s C, D, E and F.

83. The determination of the available policy limits will be based upon whether the acts alleged and eventually established may be considered as an act or multiple, continuous, related or repeated acts of "physical abuse, sexual misconduct or sexual molestation" by one person or two or more persons acting together.

84. The Policy states that all acts of "physical abuse, sexual misconduct or sexual molestation" by any one person, or two or more persons acting together will be deemed as one incident and will be deemed to occur when the first "physical abuse, sexual misconduct or sexual molestation incident" took place regardless of the number of persons injured, the time period over which the "injury" took place, the number of such acts or whether each such person participated in each act. All "physical abuse, sexual misconduct or sexual molestation incidents" by one person, or two or more persons acting together will be considered one "physical abuse, sexual misconduct or sexual molestation incident".

85. The single incident limit is triggered as the series of acts were committed by two or more persons, Dubois and Conners, acting together.

86. The timing of the incident is unequivocal that it is deemed to occur when the first incident took place regardless of the number or persons injured.

87. The last provision of the definition does state that all "physical abuse, sexual misconduct or sexual molestation incidents" by one person, or two or more persons acting together will be considered one "physical abuse, sexual misconduct or sexual molestation incident".

88. Additionally, the allegations in the Complaints and criminal indictments refer to the acts of Conners, Dubois and other "employees" and repeatedly refer to the violent culture which was led by Conners.

89. The pleadings and indictments focus on the nature and pervasiveness of the culture at Lee Residential, demonstrating that all acts committed were committed by one or more persons acting together. Ex.'s A, B, C, D, E and F.

90. Exclusions in an insurance contract are interpreted consistently with their obvious contractual purpose Acadia Ins. Co. v. Mascis, 2001 ME 101, 776 A.2d 617.

91. Although ambiguities in standard insurance policies drafted by the insurer are interpreted against the insurer, exclusionary language is not ambiguous if "an ordinary person in the shoes of the plaintiff would understand that the policy does not cover [his] claims." Gross v. Green Mountain Ins. Co., 506 A.2d 1139 (Me. 1986).

92. An ordinary person would conclude that a single incident limit should apply and that all incidents involving Connors or Dubois, and any other employee participating in concert in the ongoing abuse, are considered a single "physical abuse, sexual misconduct or sexual molestation incident".

93. The endorsement mandates that this Court rule and declare there is only one incident, subject to the $1,000,000 in coverage on the underlying policy.

94. Under the Commercial Follow Form Excess and Umbrella policy there is $1,000,000 in coverage under Coverage A- Follow Form Excess Liability Coverage.

95. Coverage under Coverage B- Umbrella Liability, is excluded pursuant to the endorsement entitled Exclusion-Abuse and Molestation (Coverage B).

96. Coverage B exclusions (f.) Expected or Intended Injury, (i.) "Personal Injury" and "Advertising Injury", (k.) Professional Liability and (l.) Punitive Damages, also eliminate coverage under Coverage B of the umbrella policy.

97. Citizens and Hanover therefore request that this Court rule and declare that the policy language of both policies is unambiguous and that a single occurrence limit should apply to all acts and claims subject to the lawsuits and other claims described herein.

98. With regard to the *Larkin* lawsuit, Citizens and Hanover request that this Court rule and declare that coverage is excluded under both policies for the counts of (3) Fraudulent Concealment, (5) Intentional Infliction of Emotional Distress, (6) Vicarious Liability, (7) Breach of Contract and (8) Punitive Damages. Ex. A, *generally*.

WHEREFORE, the Citizens and Hanover respectfully request that this Court:

A. Rule and declare that all related claims involving Dubois, Conners or other involved Lee Residential employees are deemed as a single incident;

B. Rule and declare that all related claims and abuse events constitute a single incident under the terms of the policy such that there is $1,000,000 in coverage under Commercial Package Policy number ZBP A091502 06;

C.      Rule and declare that there $1,000,000 in coverage under Commercial Follow Form Excess and Umbrella Policy No. UHP A091732 02; and

D.      Grant such other relief as is equitable and just.

Respectfully submitted,
Citizens Insurance Company of America and
Hanover Insurance Company

By Their Attorneys:
Primmer Piper Eggleston & Cramer, PC

Date: January 12, 2026

*/s/ Nicholas J. Deleault*
Nicholas J. Deleault, Esq., Bar # 005653
Primmer Piper Eggleston & Cramer, PC
P.O. Box 3600,
Manchester, NH 03105
603-626-3338
ndeleault@primmer.com